**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

PRECISION SHOOTING EQUIPMENT,
INC.,

      Plaintiff,

v.                                       CASE No.: 8:00-CIV-450-T-17-TGW

GOLDEN EAGLE INDUSTRIES,
LLC, NORTH AMERICAN
ARCHERY GROUP, LLC, and
CHARLES L. PALMER,

      Defendants.
_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION

    Plaintiff, Precision Shooting Equipment, Inc. ("PSE"), filed its Complaint for Patent Infringement (Docket No. 1) on March 6, 2000, in which it seeks compensation for damages resulting from Defendants', Golden Eagle Industries, LLC, Archery Group, LLC, and Charles L. Palmer ("Defendants"), alleged patent infringement.  PSE petitions this Court to enjoin Defendants from further alleged patent infringement.  This Court, under the authority of 28 U.S.C. § 636(b)(1)(B), Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 6.02, Local Rules of the Middle District of Florida, referred the *Markman* claim construction hearing to the Honorable Thomas G. Wilson, United States Magistrate Judge, by Order dated November 22, 2004. (Docket No. 71).

    After considering the parties' submission and oral arguments, Judge Wilson filed a Report and Recommendation ("R&R") on July 28, 2005 (Docket No. 125) wherein he recommends that this

Case No.: 8:00-CIV-450-T-17-TGW

Court construe the disputed patent provisions as PSE suggests or defer the claim construction determination until trial. On August 11, 2005, Defendants filed their Objections to the Magistrate's Report and Recommendation. (Docket No. 130). PSE filed its response thereto on August 25, 2005. (Docket No. 133). After reviewing Judge Wilson's findings in light of Defendants' objections, this Court adopts Magistrate Judge Wilson's recommendation to delay the determination of claim construction until trial.

## I. BACKGROUND

This suit involves United States Patent Nos. 4,739744 ("'744 patent") and 5,040,520 ("'520 patent"), which reflect inventions by David A. Nurney and are the basis for PSE's claims of patent infringement against Defendants. (Docket No. 100, Exhibits A, B). These patents pertain to design specifications of an improved compound bow design. (*Id.* at Exhibit A, cl. 4). The '744 patent, entitled "High Energy Limb Tip Cam Pulley Archery Bow," was issued on April 26, 1988, based upon a November 1, 1982, application. (*Id.* at Exhibit A.) The '520 patent, entitled "Limb Tip Cam for High Energy Bow," was issued August 20, 1991, based upon a February 25, 1988, application (*Id.* at Exhibit B).

Nurney assigned these patents to PSE, which is a manufacturer of archery bows and accessories. (Docket No. 1, ¶9). Defendants are in the same business as PSE and are alleged to have made, used, sold, or offered to sell archery bows that infringe upon one or more of the patent claims of the '744 and '520 patents. (Id. at ¶¶11-17). PSE seeks damages and injunctive relief against Defendants prohibiting further alleged patent infringement.

Case No.: 8:00-CIV-450-T-17-TGW

The parties have identified the claims in each patent that are in dispute. Specifically, those claims are 6, 7, and 15 of the '744 patent and 1, 21, 29, 30, and 31 of the '520 patent. Ultimately, the parties disagree on the meaning of the following terms: (1) "substantially a maximum," which appears in claim 6 of the '744 patent; (2) "substantially constant draw force," which appears in claim 15 of the '744 patent; (3) "integrating means," which appears in claim 15 of the '744 patent and all claims in the '520 patent; (4) "draw force which increases 'substantially linearly' of 80% of draw force," which appears in claim 15 in the '744 patent and claim 31 if the '520 patent; (5) "substantial portion of remaining draw distance," which appears in claim 15 of the '744 patent; (6) "substantial angle," which appears in all claims at issue in this case; and (7) "between 200 and 270 degrees," which appears in claim 15 of the '744 patent. (Docket No. 100, Exhibit A).

It is important to note that the parties chose to limit their respective presentations during the *Markman* hearing to memoranda and argument; no testimony, expert or otherwise, was included.

## II. REVIEW OF REPORT AND RECOMMENDATION

Although this Court adopts the Judge Wilson's recommendation to delay the claim construction determination until trial, it would seem that the standard of review involved in a review of an R&R would require this Court to briefly outline an example of Judge Wilson's determinations as to the claim construction itself so as to place this Court's decision in context.

### A. Standard of Review

Under the Federal Magistrate's Act, Congress vested Article

Case No.: 8:00-CIV-450-T-17-TGW

III judges with the power to authorize a United States Magistrate Judge to conduct hearings so that the Magistrate Judge may then submit to the assigning Article III judge proposed findings of facts and recommendations (i.e. R&R) for the disposition of various motions. 28 U.S.C. § 636(b)(1)(B). If a party timely objects to the Magistrate's findings of fact or recommendations in the R&R, the assigning Article III judge shall make a *de novo* determination thereof. 28 U.S.C. § 636 (b)(1). The assigning Article III judge then "may accept, reject, or modify, in whole or in part, the recommendations made by the magistrate judge." *Id.* Further, the assigning Article III judge "may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

**B. Discussion**

Judge Wilson's review of the terms "substantially a maximum" and "substantially constant draw force" will suffice for context. As Judge Wilson observed, these terms, which appear in claims 6 and 15, respectively, of the '744 patent, purport to describe the force required to draw back the bow string[1] and the amount of

---

[1] Claim 6 provides in relevant part as follows:

> . . . the improvement compromising each pulley means including the structure to constitute means for requiring the **draw force** required to rotate the pulley means relative to the handle member to be **substantially a maximum** throughout draw of the bowstring effecting at least 25 percent of the total turning of the pulley means relative to the handle member which occurs during the entire draw if the drawstring.

(Docket No. 100, Exhibit A) (emphasis added).

Case No.: 8:00-CIV-450-T-17-TGW

force sustained through a distance of the draw pull.[2]

The parties agree that the terms are synonymous. (Docket No. 98, p. 17; Docket No. 100, p. 9). However, the parties disagree about the degree of deviation from the maximum described by the two terms. PSE argues that the terms mean achieving "at least 90% of the maximum draw force." (Docket No. 100, Exhibit A, figure 7). Defendants argue that the terms mean 95% of maximum force because, inter alia, that interpretation more closely approximates the intent of the patent. (Docket No. 98, p. 35). Judge Wilson stated that because PSE's contention was supported by references to 90% in other portions of the patent, where the premise upon which Defendants base their contentions is the proximity of two lines on a graphical representation of the "substantially a maximum" line in relation to a line representing maximum force (Docket No. 100, Exhibit A, figure 7), he felt PSE's interpretation of the terms was more persuasive. (Docket No. 125, p. 15-16). However, Judge Wilson also stated that PSE's interpretation was "not compelling," and that he "would want to hear what the inventor, any expert or any skilled artisan had to say about these terms before coming to a firm conclusion." (*Id.* at 16-17).

After an independent review of the evidence in light of Defendants' objections, this Court must agree with Judge Wilson's

---

[2] Claim 2 provides in relevant part as follows:

> . . . drawing of the bowstring requiring a draw force which increases substantially linearly . . . and thereafter requiring a **substantially constant draw force** to pull the bowstring during a substantial portion of the remaining draw distance.

(Docket No. 100, Exhibit A) (emphasis added).

Case No.: 8:00-CIV-450-T-17-TGW

assessment.[3]  "[C]laims should be construed as one skilled in the art would construe them." *SmithKline Diagnostics, Inc. v. Helena Laboratories Corp.*, 859 F.2d 878, 882 (Fed. Cir. 1996).  In construing such claims, the Court must first consider intrinsic evidence – "the patent itself, including the claims, the specification, and if in evidence, the prosecution history." *Vitrionics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  In consideration of the patent, the Court must consider "the words if the claims themselves, both asserted and nonasserted, to define the scope of the patented invention." *Id.*

> The second step is to examine the specification.
>
> Although words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the specific definition of the term is clearly stated in the patent specification or file history.

*Id.*  Thus, the specification is the "single best guide to the meaning of a disputed term," and may effectively serve as a limitation on the invention. *Id.*

Third, the Court may consider the patent's prosecution history, if such history has been presented to the Court, as such history may contain express representations by the applicant to the Patent and Trademark Office regarding the scope of the claims. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995).

The Court may also, in its discretion, consider extrinsic

---

[3] Although the Court has provided but one example of the issues before Judge Wilson, this Court finds that its consideration of virtually all of the disputed terms in this case is wanting for lack of extrinsic evidence.

Case No.: 8:00-CIV-450-T-17-TGW

evidence.

> Extrinsic evidence consists of all the evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises. This evidence may be helpful to explain scientific principles, the meaning of technical terms, and terms of art that appear in the patent and prosecution history.

*Id.* However, the Court should consider extrinsic evidence only to aid its understanding of how one trained in the art might construe rather obscure terms, not to change or contradict the terms of a claim. *Id.* at 981.[4]

This Court finds it necessary to hear additional evidence to aid its construction of the terms at issue in this case. Therefore, this Court will defer claim construction matters until trial.  The Defendants' assertion that to delay this determination at this point would amount to judicial inefficiency rings hollow when it seems that the parties have wasted this Court's (and Judge Wilson's) time with a less than adequate presentation.  The Court cannot stress enough the virtue of providing live testimony in preliminary hearings of this type. While a claim construction hearing under *Markman* seeks to answer a legal question - the law between the parties vis-a'-vis the patent claims themselves - such a determination is based at least in part on the credibility of the evidence, including witness testimony.  Live witness testimony provides the Court with an

---

[4] Although this case also involves "means-plus-function" language, it is enough for the purposes of this opinion to note that the same patent claim construction rules are generally equally applicable to construction of a "means-plus-function" claim. *Medtronic v. Intermedics, Inc.*, 799 F.2d 734, 742 (Fed. Cir. 1986), *cert. denied*, 479 U.S. 1033 (1987).

Case No.: 8:00-CIV-450-T-17-TGW

opportunity to observe the witness's demeanor, thereby aiding in an assessment of credibility.  Moreover, physical presence subjects the witness to cross-examination, the "greatest legal engine ever invented for discovery of the truth." 5 Wigmore § 1367.  Accordingly, it is

**ORDERED** that Defendants' objections (Docket No. 130) to Judge Wilson's R&R (Docket No. 125) be **OVERRULED and the report and recommendation be adopted and incorporated by reference herein.**

**DONE AND ORDERED** in Chambers, in Tampa, Florida, this 17th day of November, 2005.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:
All parties and counsel of record